```
      FILED          RECEIVED
✓     ENTERED        SERVED ON
              COUNSEL/PARTIES OF RECORD

         AUG 1 2 2008

      CLERK US DISTRICT COURT
       DISTRICT OF NEVADA
BY:                        DEPUTY
```

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

TYRONE MCDOUGALD,                 )     3:06-CV-00623-ECR (RAM)
                                  )
            Plaintiff,            )
                                  )
      vs.                         )     **REPORT AND RECOMMENDATION**
                                  )     **OF U.S. MAGISTRATE JUDGE**
C/O KENNETT; C/O MARINO; C/O      )
CASNO; LT. POE; and WARDEN BACA   )
                                  )
            Defendants.           )
                                  )

This Report and Recommendation is made to the Honorable Edward C. Reed, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion to Dismiss/Summary Judgment on Amended Complaint (Doc. #104). Plaintiff opposed the motion (Doc. #151) and Defendants did not reply. Also before the court is Plaintiff's Motion for Temporary Restraining Order and a Preliminary Injunction (Doc. #144). Defendants opposed the motion (Doc. #150) and Plaintiff replied (Doc. #158). Also before the court is Plaintiff's Cross-Claims Motion for Partial Summary Judgment as to the Liability of Defendant Kevin Kozloff (Doc. #152). Defendants opposed the motion (Doc. #156) and Plaintiff did not reply.

With respect to Defendants' Motion to Dismiss (Doc. #151), both parties submitted matters outside the pleadings, including exhibits and affidavits, in support of and in opposition to the instant motion; thus, both parties have had a reasonable opportunity to present all material relevant to a motion for summary judgment. This Report and

1  Recommendation considers all matters submitted by both parties; therefore, the motion to
2  dismiss is treated as a motion for summary judgment in accordance with FED. R. CIV. PRO. 56.

## I. BACKGROUND

4  Plaintiff is a prisoner in Ely State Prison (ESP) in Ely, Nevada in the custody of the
5  Nevada Department of Corrections (NDOC) (Doc. #60). At the time of the facts giving rise
6  to his complaint, Plaintiff was a prisoner at High Desert State Prison (HDSP) in Indian
7  Springs, Nevada, also in the custody of NDOC (*Id.*). Plaintiff brings his complaint pursuant
8  to 42 U.S.C. § 1983, alleging state officials violated his Eighth Amendment rights against cruel
9  and unusual punishment (*Id.*). Specifically, Plaintiff alleges Defendants used excessive force
10 in violation of his Eighth Amendment rights (*Id.*).

11 In his Amended Complaint, Plaintiff alleges Defendants brutally assaulted him on the
12 main yard at HDSP while he was in full restraints in the presence of approximately 30-40
13 inmates (*Id.* at 4). Plaintiff then alleges he was assaulted a second time in the infirmary by
14 Defendant Kozloff, who purportedly slammed Plaintiff's head repeatedly into the concrete
15 floor (*Id.*).

16 In Count I, Plaintiff asserts a violation of his Eighth Amendment right against cruel
17 and unusual punishment (*Id.* at 6). Plaintiff alleges the Gun Rail officer ordered him and 30
18 other inmates to go through the middle walkway to the main yard chowhall and Plaintiff began
19 power walking up the hill as he usually does (*Id.*). Plaintiff then alleges the Gun Rail officer
20 had made a mistake as another unit was currently heading down the hill (*Id.*). A gun shot was
21 fired and all inmates laid down on the ground and, shortly after, Defendant Marino ordered
22 Plaintiff to stand up and walk to the middle of the yard (*Id.*). After some words were spoken
23 between the two regarding why Plaintiff did not initially stop, Defendant Marino turned and
24 grabbed Plaintiff by the throat with both hands and attempted to slam Plaintiff to the ground;
25 however, Defendant Marino slipped on loose gravel and fell backwards pulling Plaintiff down
26 on top of him (*Id.* at 6-7). Then, Defendants Foster, Kozloff, McPherson and Saldino arrived
27 and placed Plaintiff in full restraints with his hands cuffed behind his back (*Id.*). Defendants

28

2

then began punching Plaintiff in the face, kneeing Plaintiff in the face and stomping Plaintiff in the head, face and back (Doc. #60 at 7). Plaintiff asserts he is certain all named Defendants participated in beating him (*Id.*). Next, Defendant Powe arrived on the scene accompanied by another officer with a video camera (*Id.*). Plaintiff was eventually escorted to the infirmary (*Id.* at 8).

In the infirmary, Plaintiff alleges Defendant Marino arrived and began pacing while saying, "I'm going to get you" and "I'm going to make you pay for this." (*Id.*). Defendant Kozloff then suddenly grabbed Plaintiff out of his chair and slammed Plaintiff down on the ground while using his left forearm to slam Plaintiff's head into the concrete floor several times (*Id.*). Plaintiff alleges he was rendered briefly unconscious as a result of the force used by Defendant Kozloff and, when he awakened, he was laying in a pool of his own blood (*Id.*). Plaintiff contends he sustained two (2) deep cuts above his left eye and the entire left side of his face was swollen, including his left eye, which was swollen completely closed (*Id.*).

Finally, Plaintiff contends Defendant Saladino placed a soiled pair of dirty underwear over the top of Plaintiff's head to cover his face and marched Plaintiff past the chow halls, which were filled with inmates (*Id.* at 9). Plaintiff contends this was an act of public humiliation intended to add insult to injury (*Id.*).

In Count II, Plaintiff asserts a violation of his Eighth Amendment right against cruel and unusual punishment (*Id.* at 10). Plaintiff alleges Defendant Powe, knowing that there were flaring tempers among the Defendants on the yard, permitted Defendants to further retaliate against Plaintiff by allowing the same correctional officers who participated in the beating escort Plaintiff to the infirmary unsupervised (*Id.* at 10-11). Thus, Plaintiff asserts Defendant Powe acted with deliberate indifference towards Plaintiff's safety by failing or refusing to properly supervise his subordinates (*Id.* at 11). Plaintiff contends the injuries he sustained in the second assault that occurred in the infirmary were due to Defendant Powe's failing to take remedial steps to avert or prevent such acts from occurring (*Id.*). Plaintiff further contends Defendant Powe's actions show he approved of the first beating and

1  continued to authorize physical abuse by his subordinate officers in the infirmary (Doc. #60

2  at 11).

3      Plaintiff requests the following relief: injunctive relief, compensatory damages and

4  punitive damages (*Id.* at 15-16).

## II. CROSS MOTIONS FOR SUMMARY JUDGMENT

### A.   STANDARD FOR SUMMARY JUDGMENT

7      The purpose of summary judgment is to avoid unnecessary trials when there is no

8  dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

9  18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where,

10 viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there

11 are no genuine issues of material fact in dispute and the moving party is entitled to judgment

12 as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

13 Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis

14 for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable

15 minds could differ on the material facts at issue, however, summary judgment is not

16 appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516

17 U.S. 1171 (1996).

18     The moving party bears the burden of informing the court of the basis for its motion,

19 together with evidence demonstrating the absence of any genuine issue of material fact.

20 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,

21 the party opposing the motion may not rest upon mere allegations or denials of the pleadings,

22 but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty*

23 *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Although the parties may submit evidence in an

24 inadmissible form, only evidence which might be admissible at trial may be considered by a

25 trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v.*

26 *Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

27

28                                         4

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Liberty Lobby*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

**B.    DISCUSSION**

**1.    Defendants' Motion for Summary Judgment**

Defendants make the following arguments in support of their motion for summary judgment: 1) Defendants Kennett and Baca should be dismissed because there are no causes of actions against them and they are not Defendants in the Amended Complaint; 2) Defendant Powe lacks the necessary personal participation and did not participate in any constitutional violation; Defendants are entitled to qualified immunity; and no excessive force was used during the prison yard incident or the infirmary incident (Doc. #104)

Plaintiff argues Defendant Baca should be dismissed, however, Defendant Kennett should not; Defendant Powe was deliberately indifferent to a substantial risk of harm to Plaintiff, which violated his Eighth Amendment rights; and Defendants are not entitled to qualified immunity because excessive force was used against him on the yard and in the infirmary, which violated his constitutional rights that were clearly established at the time of the incidents (Doc. #151).

///

5

1

2.    **Plaintiff's Cross Motion for Partial Summary Judgment Against**

2          **Defendants Kozloff**

3          Plaintiff requests partial summary judgment as to Defendant Kozloff essentially arguing

4  that the video tape of the infirmary incident clearly shows he used excessive force in violation

5  of Plaintiff's Eighth Amendment rights and he is not entitled to qualified immunity for his

6  conduct (Doc. #152).

7          Defendants argue Defendant Kozloff did not use excessive force in the infirmary, as

8  the force used was reasonable and necessary under the circumstances (Doc. #156).

9  Furthermore, Defendants argue, in the event Defendant Kozloff did use excessive force, he

10  is entitled to qualified immunity because he reasonably believed his conduct was lawful (*Id.*).

11         The first inquiry must be whether Plaintiff's constitutional rights were violated. If this

12  inquiry is answered negatively, the court need not address Defendants' remaining arguments.

13  Thus, the court will address this issue first.

14                          **EXCESSIVE USE OF FORCE**

15         The excessive force analysis begins with identification of the specific constitutional right

16  allegedly infringed by the officers' use of force. *Graham v. Connor*, 490 U.S. 386, 393-394

17  (1989). When prison officials use excessive force against prisoners, they violate the inmates'

18  Eighth Amendment right to be free from cruel and unusual punishment. *Clement v. Gomez*,

19  298 F.3d 898, 903 (9th Cir. 2002). Thus, Plaintiff's excessive force claim is analyzed under

20  the Eighth Amendment. *Id., see also P.B. v. Koch*, 96 F.3d 1298 (9th Cir. 1996) (citing

21  *Graham*, 490 U.S. at 394) ("[A] convicted prisoner is protected from excessive force by the

22  Eighth Amendment and a citizen being arrested or investigated is protected from excessive

23  force by the Fourth Amendment.").

24         Excessive force in the prison context does not amount to a constitutional violation if

25  it is applied in a good faith effort to restore discipline and order and not "maliciously and

26  sadistically for the very purpose of causing harm." *Clement*, 298 F.3d at 903. "This standard

27  necessarily involves a more culpable mental state than that required for excessive force claims

28                                  6

arising under the Fourth Amendment's unreasonable seizures restriction.  For this reason, under the Eighth Amendment, [the court] look[s] for malicious and sadistic force, not merely objectively unreasonable force." *Id.*  The "malicious and sadistic" standard applies to all allegations of excessive force in the prison context and the Supreme Court does not require, as a threshold matter, a finding that an emergency situation, such as a riot or lesser disruption, existed.  However, the absence of an emergency may be probative of whether the force was indeed inflicted maliciously or sadistically for the very purpose of causing harm. *Jordan v. Gardner,* 986 F.2d 1521, 1528 (9th Cir. 1993).

"[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force.  Despite the weight of these competing concerns, corrections officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance." *Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (internal quotations omitted).

> Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"  In recognition of these similarities, we hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Hudson,* 503 U.S. at 6-7.

The extent of injury suffered by an inmate is one factor that may suggest whether the force used was applied in a good-faith effort in the given situation "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Hudson,* 503 U.S. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably

7

1  perceived by the responsible officials, and any efforts made to temper the severity of a forceful

2  response.  The absence of serious injury is therefore relevant to the Eighth Amendment

3  inquiry, but does not end it." *Hudson*, 503 U.S. at 7 (internal citations and quotations

4  omitted).  Not every malevolent touch by a prison guard gives rise to an Eighth Amendment

5  violation. *Id.* at 9. De minimus uses of physical force that are not repugnant to the conscience

6  of mankind are excluded from the Eighth Amendment. *Id.* at 10.

7          A prison guard's unjustified striking, beating, or infliction of bodily harm on an inmate

8  violates the Eighth Amendment when it "evince[s] such wantonness with respect to the

9  unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*

10  *v. Albers*, 475 U.S. 312 (1986). While "[p]rison officials must be free to take appropriate action

11  to ensure the safety of inmates and corrections personnel and to prevent escape or

12  unauthorized entry", *Bell v. Wolfish*, 441 U.S. 520 (1979), that authorization ends when the

13  force used in the action is so excessive as to violate a prisoner's constitutional rights. *Whitley*,

14  475 U.S. at 320 (actions taken that guard could not plausibly have thought necessary are

15  actionable); *see also McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).  Thus, the

16  question in this case turns on whether the force applied by Defendants in each incident was

17  applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically

18  for the purpose of causing harm. *Hudson*, 503 U.S. at 7.

19          For summary judgment purposes, the court accepts the non-moving party's version

20  of the incident as true and determines whether the moving party is, nevertheless, entitled to

21  judgment as a matter of law.  With respect to each motion, drawing all inferences in favor of

22  the non-moving party and assuming each version of events to be true, the court cannot say

23  as a matter of law that either party is entitled to summary judgment.  The disputed facts

24  prevent resolution of both the prison yard incident and the infirmary incident at this juncture.

25  Even if the parties agreed on the amount of force that was applied in each incident (which they

26  do not), the question of whether the force used was so excessive as to violate Plaintiff's

27  constitutional rights cannot properly be resolved on summary judgment because, where

28                                          8

1  reasonable minds could differ on the material facts at issue, summary judgment is not

2  appropriate. *Warren*, 58 F.3d at 441.  Here, reasonable minds could differ on the material

3  facts with respect to each incident for the reasons set forth below.

4           a.    Prison Yard Incident

5           The parties do not dispute the following facts with respect to the prison yard incident:

6  on March 12, 2006 there was an incident in the yard at HDSP; at approximately 6:00 p.m.

7  Unit 6 was leaving the dining hall while Unit 4 was headed towards the dining hall; the gun

8  post officers ordered all inmates to halt and get on the ground; Plaintiff initially did not stop;

9  shots were fired from the gun post; at some point, Plaintiff complied with the order and got

10  down; Defendant Marino approached Plaintiff and ordered him to get up and go the fence that

11  separated the yards; an altercation took place between Plaintiff and Defendant Marino and

12  both fell to the ground;  Defendants Foster and McPherson came to the vicinity of Plaintiff

13  and Defendant Marino; Plaintiff was placed in full restraints; Sgt. Rogers came to the scene

14  with a video camera; Plaintiff was eventually escorted to the infirmary (Docs. #104 at 2; 152

15  at 2-3).

16           The parties dispute what took place between the time the inmates were ordered to get

17  on the ground and the time Plaintiff was escorted to the infirmary.  Plaintiff alleges prison

18  officials apparently mis-communicated directing the two (2) units to enter and exit the dining

19  hall at the same time and, due to this obvious mistake, the gun post officer ordered all inmates

20  to stop (Doc. #152 at 2-3).  However, Plaintiff asserts he did not stop because he did not hear

21  the order, the gun post officer did not use a bullhorn and he was already halfway to the dining

22  hall (*Id.* at 3).  Plaintiff next alleges shots were fired and all inmates complied with the order

23  to get down on the ground (*Id.*).  After he got down on the ground, Plaintiff asserts Defendant

24  Marino approached him and ordered him to get up and go to the fence that separated the yard

25  (*Id.*)  Plaintiff further asserts, apparently after he got up, Defendant Marino "grabbed him

26  by the throat with both his hands and attempted to pick him up by the neck and slam him to

27  the ground." (*Id.*).  Plaintiff alleges that, in the process of trying to pick up Plaintiff, Defendant

28                                        9

1  Marino's feet slipped on the loose gravel and Defendant Marino fell backwards pulling Plaintiff

2  on top of him (Doc. #152 at 3).   Apparently, Defendants Foster and McPherson came to

3  Defendant Marino's aid and Plaintiff then alleges that, after he was in full restraints, he was

4  brutally beaten by the attending officers (*Id.*).

5      Defendants assert Plaintiff did not comply on the first shot, but did comply on the

6  second shot (Doc. #104 at 2). Defendants then assert Defendant Marino confronted Plaintiff

7  and ordered him to get up and go to the fence; but, Plaintiff refused and, instead, punched

8  Defendant Marino in the face (*Id.*).  Both Defendant Marino and Plaintiff fell to the ground

9  (*Id.*). Next, Defendants assert Defendants Foster and McPherson came to Defendant Marino's

10  rescue and subdued Plaintiff (*Id.*).  Plaintiff was then placed in restraints, videotaped, and

11  escorted to the infirmary (*Id.* at 3).

12      The yard incident is not on video, as the video begins at approximately 6:24 p.m., 24

13  minutes after the incident began. The video begins with Plaintiff already subdued, face down

14  on the ground in full restraints, with what appear to be dirt and lacerations on the right side

15  of his face. Plaintiff does not respond to officers' inquiries as to his identity.  Approximately

16  nine (9) minutes later at 6:33 p.m., Plaintiff is helped up and escorted to the infirmary. The

17  video does not indicate excessive force was used after the video began through Plaintiff's escort

18  to the infirmary, and Plaintiff does not allege escorting officers used excessive force at this

19  time. Because the video does not show the events leading up to 6:33 p.m., the court can only

20  turn to the evidence in the record and the parties' version of events. Clearly, there are two

21  (2) different versions of events.

22      To support their version of events, Defendants provide sworn affidavits of correctional

23  officers and other evidence indicating Plaintiff refused to follow instructions, assaulted

24  Defendant Marino by striking him in the face with a closed fist, refused to cooperate with

25  correctional officers, and sustained only minor cuts and abrasions (*see* Exhibits attached to

26  Doc. #152). Defendants assert Defendant Marino sustained minor trauma to the nose.

27

28                                        10

To support his version of events, Plaintiff provides sworn declarations from three (3) fellow inmates who testify that they witnessed the events that took place as follows: Defendant Marino grabbed Plaintiff around his neck with both hands and attempted to slam Plaintiff to the ground; Defendant Marino slipped on the loose gravel and fell backwards pulling Plaintiff on top of him; Defendants Kozloff, Marino, Foster, Mcpherson and Saladino placed Plaintiff in full restraints and then kicked, stomped, kneed and punched Plaintiff in the face, head and upper body; Plaintiff attempted to cooperate with Defendants before they assaulted him and while he was in full restraints (Doc. #152-2 at 19-36).

On a motion for summary judgment, even if a plaintiff's evidence is weak and does not extend beyond his own testimony, it is not the court's role to weigh conflicting evidence or to make credibility determinations. *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) ("The court must not weigh the evidence or determine the truth of the matters asserted but must only determine whether there is a genuine issue for trial."). The evidence before the court, which includes evidence beyond Plaintiff's own testimony, is sufficient to raise genuine issues of material fact as to the use of force in the prison yard. Thus, there are genuine issues for trial as to whether Defendants used excessive force on Plaintiff in the prison yard.

Construing the facts and the evidence in the light most favorable to Plaintiff, if Defendants kicked, stomped, kneed and punched Plaintiff in the face, head and upper body after he was placed in full restraints, said conduct would violate Plaintiff's clearly established constitutional rights and reasonable officers would not believe such conduct was lawful under the circumstances. Accordingly, Defendants' request for summary judgment on Plaintiff's Eighth Amendment claim with respect to the prison yard incident should be **DENIED**. Defendants' request for summary judgment on qualified immunity grounds with respect to the prison yard incident should also be **DENIED**.

///

///

11

b.   Infirmary Incident

The only facts that appear to be undisputed with respect to the infirmary incident are the fact that Plaintiff was escorted to the infirmary in restraints, Plaintiff was seated in the infirmary still in restraints; Defendant Marino came into the infirmary and spoke to Plaintiff; Plaintiff spit at Defendant Marino; Defendant Kozloff used some amount of force to put Plaintiff on the floor to subdue him; and Plaintiff suffered some form of injury to his head (Docs. #152 at 4-5; 156 at 5-6).

The parties dispute what took place between the time Plaintiff was initially seated in the infirmary through the time he was forced to the ground by Defendant Kozloff. Plaintiff alleges Defendant Marino essentially manipulated Plaintiff by antagonizing him in order to get Plaintiff to react so that he could exact revenge on Plaintiff (Doc. #152 at 4-5). When Plaintiff reacted by spitting towards Defendant Marino, Defendant Kozloff rushed towards Plaintiff, slammed him to the ground while he was still in full restraints with his hands cuffed behind his back and bashed Plaintiff's head into the concrete floor three (3) consecutive times, splitting Plaintiff's head open in two (2) separate places and rendering Plaintiff unconscious for a short period of time (*Id.*).

Defendants assert Plaintiff was aggressive and, in light of all the manner of diseases spread through saliva, Defendant Kozloff properly placed the combative Plaintiff on the floor to subdue him, using the minimum amount of force necessary to keep him subdued until medical could attend to his cuts and scrapes (Doc. #156 at 6). Defendants further assert Plaintiff continued to resist while on the floor by thrashing his legs; thus, Defendant Kozloff correctly held Plaintiff's chest to the floor until he ceased to resist (*Id.*). Defendants contend the infirmary incident either reopened cuts above Plaintiff's eye or caused the cuts; but, in either event, the cuts were minor and Defendant Kozloff did not use excessive force (*Id.*).

Clearly, there are two different versions of events with respect to the infirmary incident; however, this incident was videotaped. The video portrays the following events transpiring:

12

Plaintiff is seated in the infirmary at 6:37 p.m.  Plaintiff refuses to answer inquires as to his identity, consistent with his refusal in the yard.  Plaintiff gets up and moves away from the camera and then comes back and sits down.  At 6:41 p.m., Plaintiff is facing to his left apparently looking towards Defendant Marino (who is not pictured) and you can hear Defendant Marino and Plaintiff exchanging words.  Not all the words are audible; however, you can hear Defendant Marino say something to Plaintiff and Plaintiff respond to "take off the cuffs, bitch" and something about Defendant Marino's looks, to which Defendant Marino responds "look at you fuckin' asshole", and Plaintiff responds again to "take the cuffs off, pussy".  Defendant Marino has more words with Plaintiff, something to the effect of "dickhead fucking piece of shit" and "fuck you".  Then, at 6:42 p.m., it appears Defendant Marino is walking towards Plaintiff's left by the way Plaintiff's head shifts, obviously watching Defendant Marino, and Plaintiff spits towards him.  Immediately after Plaintiff spits, Defendant Kozloff grabs Plaintiff with both hands from the chair and pulls Plaintiff to the floor.  At first, another officer is blocking the camera, but then you can see Defendant Kozloff with his left forearm on the back of Plaintiff's neck and his right hand in Plaintiff's back, essentially pushing on Plaintiff or using his body weight to subdue Plaintiff.  Next, Defendant Kozloff appears to force his left forearm into Plaintiff's neck at least two (2) times, then the camera moves away from Plaintiff and returns with Defendant Kozloff leaning over Plaintiff with his left forearm in the back of Plaintiff's neck and his right hand on Plaintiff's body.  This all takes place in less than a minute, as the video still indicates it is 6:42 p.m.  At 6:43 p.m., another officer places a spit hood over Plaintiff's head, while a third officer appears to be holding onto Plaintiff's leg restraints.  Defendant Kozloff gets up and puts his knee in Plaintiff's back at 6:43 p.m. and the camera again turns away from Plaintiff onto a wall, then back onto Plaintiff showing Defendant Kozloff with his left knee on Plaintiff's back.  Plaintiff does not appear to be moving at this time and is not making any sounds.  The camera continues to move away from Plaintiff, then back to Plaintiff several times.  Defendant Kozloff then reaches down with his left hand, with his knee still in Plaintiff's back, and holds Plaintiff's right arm (still cuffed behind his back).  Plaintiff begins making some type of moaning sounds and Defendant Kozloff looks down and tells Plaintiff not to move.  At 6:44 p.m., Plaintiff starts moving, again making moaning sounds, and the camera again moves off and back onto Plaintiff.  Then, medical staff appear on the video and ask officers Plaintiff's identity, which the officers indicate they do not know.  Apparently, Plaintiff has no I.D. card on him at this time.  Medical staff begin to ask Plaintiff his name and tell him to cooperate, indicating there is blood.  Somebody tells medical staff his name is McDougald; but, Plaintiff still does not respond to inquiries.  At 6:46 p.m., medical appear to partially remove the spit hood to check Plaintiff's injuries and, when the camera is moved to view Plaintiff at a angle, there is a pool of blood on the floor beneath Plaintiff's head.  The nurse comments that there is blood all over the place requesting Plaintiff to cooperate so his injuries can be checked.  Plaintiff's head is lifted up; but, he does not verbally respond to the nurses requests.  Plaintiff continues to refuse to talk to medical staff.  Three medical staff members try to attend to Plaintiff's injuries.  One puts a medical pad beneath Plaintiff's head covering the blood and fully removes the spit hood.  Medical staff try and determine the extent of Plaintiff's injuries.  Plaintiff does not respond to any questions.  At 6:48 p.m., Defendant Kozloff sits Plaintiff up at the nurse's request and  holds onto to Plaintiff's jacket at the shoulders.  At 6:49 p.m., the nurse tells Plaintiff to "chill" and tells Plaintiff to look at her because there is "a lot of blood here" and she

13

wants to clean it up a little. Plaintiff sits still; but, does not verbally respond. Another nurse asks Plaintiff if he is hurt; but, again, he does not respond. Medical staff then begin to clean Plaintiff's wounds and wipe the left and right sides of Plaintiff's face (apparently wiping off blood and tending to an injury near his left eye).

The video continues; but, the court need not detail the remaining events in this Report, as Plaintiff does not allege Defendants continued to use excessive force beyond this point in the video.

Based on the differing versions of events and the events as portrayed in the video, there are genuine issues of material fact as to whether Defendant Kozloff slammed or banged Plaintiff's head into the concrete floor on three (3) occasions, rendering him unconscious for a period of time. Viewing the evidence in the light most favorable to Plaintiff, the video indicates Defendant Kozloff may have banged Plaintiff's head into the ground, rendering Plaintiff unconscious for a period of time and causing head and/or face injuries. As detailed above, Plaintiff stopped moving for a period of time after he was forced to the ground, which can be construed as Plaintiff being unconscious. Plaintiff then began to make moaning sounds, which can be construed as Plaintiff regaining consciousness. There is clearly blood on the floor evidencing Plaintiff was, in fact, injured and Defendants do not dispute Plaintiff suffered at least some extent of injuries. Even viewing the evidence in the light most favorable to Defendants and taking as true that Plaintiff's injuries were minor cuts and scrapes, the absence of serious injury is not dispositive of whether Defendant Kozloff used excessive force.

With respect to both motions, viewing the evidence in the light most favorable to the non-moving party, the court cannot say a reasonable juror would or would not find Defendant Kozloff used excessive force. As previously stated, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren*, 58 F.3d at 441. Furthermore, it is not the court's role to weigh the evidence or determine the truth of the matters asserted. *Summers*, 127 F.3d at 1152. Thus, there are genuine issues for trial as to whether Defendant Kozloff used excessive force on Plaintiff in the infirmary.

14

Once again construing the facts in the light most favorable to Plaintiff, if Defendant Kozloff did, in fact, bang Plaintiff's head into the concrete floor three (3) times, while Plaintiff's hands were cuffed behind his back, rendering Plaintiff unconscious and causing head or facial injuries due to Plaintiff spitting in the direction of another officer, such force would violate Plaintiff's clearly established constitutional rights and a reasonable officer would not believe such conduct was lawful under the circumstances. Accordingly, Defendants' request for summary judgment on Plaintiff's Eighth Amendment claim with respect to the infirmary incident should be **DENIED**. Defendants' request for summary judgment on qualified immunity grounds with respect to the infirmary incident should also be **DENIED**. And, Plaintiff's request for partial summary judgment as to Defendant Kozloff should be **DENIED**.

### DISMISSAL OF UNNAMED DEFENDANTS

Defendants assert Defendants Kennett and Baca should be dismissed because there are no causes of actions against them and they are not named Defendants in the Amended Complaint (Doc. #104 at 6-7). Plaintiff then argues Defendant Kennett should not be dismissed because, pursuant to Rule 42(b), he is entitled to file an amended complaint "to separate the case involving Defendant Kennett from the case at bar, as the statute of limitations otherwise has run in either case." (Doc. #151 at 14).

It appears Plaintiff is seeking to file a separate case against Defendant Kennett; however, because the statute of limitation has run, he wishes to amend his complaint to assert his claims against Defendant Kennett in the instant suit, then use Rule 42(b) to separate the two (2) cases. Thus, Plaintiff is essentially requesting, in his opposition, to amend his complaint. It also appears Defendants are seeking to dismiss individuals who are not named in the amended complaint and are not parties to this suit.

Plaintiff's request to amend his complaint is not properly brought in his opposition to Defendants' motion for summary judgment, and it is unnecessary for Defendants to request to dismiss individuals who are not actually parties to the instant suit. Thus, Defendants' request to dismiss Baca and Kennett should be **DENIED AS MOOT**.

**PERSONAL PARTICIPATION OF DEFENDANT POWE**

Liability under § 1983 arises only upon a showing of personal participation by the defendants in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). There is no respondeat superior liability under § 1983. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (rejecting the concept of respondeat superior liability in the section 1983 context and requiring individual liability for the constitutional violation); *Taylor*, 880 F.2d at 1045; *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980) (holding that section 1983 liability must be based on the personal involvement of the defendant)); see *also Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984).

A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor*, 880 F.2d at 1045. In other words, a supervisor may be liable under § 1983 only if there exists either "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (internal citations omitted).

Defendants request dismissal of Defendant Powe for lack of personal participation (Doc. #104 at 7).

Plaintiff argues Defendant Powe acted with deliberate indifference towards Plaintiff's safety by failing to protect Plaintiff from further harm by Defendants when he allowed them to escort Plaintiff to the infirmary without supervision, which ultimately led to the second assault on Plaintiff (Doc. #151 at 15-20). Plaintiff asserts that, on October 27, 2005, Defendant Powe verbally threatened the use of future violence against Plaintiff and Defendant Powe lied about not being present when the incident in the yard occurred (*Id.* at 16-17). Thus, Plaintiff requests the court infer from Defendant Powe's purported threat of future violence that slamming inmates heads into the concrete floor is a standard method of operation for

16

Defendant Powe and his immediate subordinates (*Id.* at 19). Plaintiff contends Defendant Powe failed to supervise his subordinates after he was informed that Plaintiff had assaulted a correctional officer (*Id.*).

Construing Plaintiff's allegations in his amended complaint in the light most favorable to him, in Count II, Plaintiff admits that he was already being restrained upon Defendant Powe's arrival on the scene (Doc. #60 at 10). Thus, the alleged assault in the yard had already occurred prior to Defendant Powe's arrival and there was no personal participation on the part of Defendant Powe with respect to the yard incident. Plaintiff essentially requests the court construe the fact that Defendant Powe allegedly threatened the use of violence against Plaintiff in October, 2005 (approximately five (5) months prior to facts giving rise to Plaintiff's complaint), the fact that Defendant Marino reported to Defendant Powe that *Plaintiff* had just assaulted him, and the fact that Defendant Powe allowed the same correctional officers who were present at this alleged assault *by Plaintiff* to escort Plaintiff to the infirmary, as evidence of Defendant Powe's acquiescence or approval of the use of excessive force against Plaintiff. Thus, Plaintiff asserts Defendant Powe "knew or should have known there could be trouble with these same officers escorting Plaintiff to the medical department, unsupervised." (*Id.* at 11).

Under these facts, Plaintiff has failed to show Defendant Powe personally participated in the alleged deprivation of his constitutional rights. Defendant Powe was not at the scene until after the first alleged assault occurred. Plaintiff admits that, upon arrival to the scene, Defendant Powe was only informed that Plaintiff had assaulted Defendant Marino, not that Defendant Marino and other officers had assaulted Plaintiff. In fact, other than Plaintiff's mere contention that Defendant Powe should have known the correctional officers' tempers would be flared, there is no evidence Defendant Powe had any reason to know Defendant Kozloff would assault Plaintiff in the infirmary.

The video evidences no use of force by Defendants from the time the video began taping through Plaintiff's escort to the infirmary. The video further evidences Defendant Kozloff did

not allegedly assault Plaintiff (construing the video in Plaintiff's favor) until after words were spoken between Defendant Marino and Plaintiff, purportedly provoking Plaintiff's response of spitting towards Defendant Marino.  There is no indication on the video that Defendant Powe had any reason to suspect that Plaintiff would be assaulted in the infirmary because Defendants' tempers were flared.  And Plaintiff admits Defendant Powe was not present during the alleged assault on the yard.  Furthermore, the alleged threat of violence by Defendant Powe, which took place approximately five (5) months prior to the alleged assault that occurred prior to Defendant Powe's arrival on the scene, is too attenuated to evidence any deliberate indifference on the part of Defendant Powe to Plaintiff's personal safety. Accordingly, under these facts, Defendants' request to dismiss Defendant Powe for lack of personal participation should be **GRANTED**.[1]

### III. MOTION FOR TEMPORARY RESTRAINING ORDER

**A.**     **STANDARD FOR TRO**

A temporary restraining order is available to an applicant for a preliminary injunction when the applicant may suffer irreparable injury before the court can hear the application for a preliminary injunction. FED. R. CIV. P. 65(b) (motion for preliminary injunction shall be set for hearing at earliest possible time after entry of temporary restraining order); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423 (1974) (temporary restraining order issued in state court expired ten (10) days after action was removed to federal court).  Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347, n. 2 (1977); *Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting).

---

[1] Dismissal of Defendant Powe results in a dismissal of Count II, as said claim is stated only against Defendant Powe.

A preliminary injunction is an "extraordinary remedy and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury." *Shelton v. Nat'l Collegiate Athletic Ass'n*, 539 F.2d 1197, 1199 (9th Cir. 1976).  In the prison context,

> [t]here is no iron curtain drawn between the Constitution and the prisons of this country. When the remedial powers of a federal court are invoked to protect the constitutional rights of inmates, the court may not take a hands-off approach. The duty to protect inmates' constitutional rights, however, does not confer the power to manage prisons, for which courts are ill-equipped, or the capacity to second-guess prison administrators. Federal courts should not, in the name of the Constitution, become enmeshed in the minutiae of prison operations. Our task is limited to enforcing constitutional standards and does not embrace superintending prison administration.
> ....
> As a matter of respect for the state's role and for the allocation of functions in our federal system, as well as comity toward the state, the relief ordered by federal courts must be consistent with the policy of minimum intrusion into the affairs of state prison administration that the Supreme Court has articulated for the federal courts. "[T]he principles of federalism which play such an important part in governing the relationship between federal courts and state governments" are applicable "where injunctive relief is sought ... against those in charge of an executive branch of an agency of state" government. We should, therefore, fashion the least intrusive remedy that will still be effective. In shaping that remedy, we must also, as a matter of judicial administration, regard the essential nature of federal courts in an adversary system. Our remedial powers are inherently judicial, not administrative.

*Toussaint v. McCarthy*, 801 F.2d 1080, 1086 (9th Cir. 1986) (quoting *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982), *amended*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983)) (internal citations omitted).

A fundamental principle of a preliminary injunction is the basic function to preserve the status quo ante litem pending a determination of the action on the merits. *Larry P. v. Riles*, 502 F.2d 963, 965 (9th Cir. 1974); *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472, 476 (9th Cir. 1969); *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804 (9th Cir.) *cert. denied*, 375 U.S. 821 (1963).  In the Ninth Circuit, the moving party must meet one of two tests. Under the first test, "[t]he traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest [in certain cases]. In cases

where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005) (citing *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992)); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  Under the second test, "the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.  These [last two criteria] are not separate tests, but the outer reaches 'of a single continuum.'" *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200-1201 (9th Cir. 1980) (internal citations omitted).

"The critical element ... is the relative hardship to the parties.  If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly.  No chance of success at all, however, will not suffice." *Benda v. Grand Lodge of Intern. Ass'n of Machinists and Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978).  At an irreducible minimum, Plaintiff must show that there is a fair chance of success on the merits. *Immigrant Assistance Project of Los Angeles County Fed'n of Labor v. Immigration and Naturalization Serv.*, 306 F.3d 842, 873 (9th Cir. 2002); *see also Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (quoting *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 674-75 (9th Cir. 1984)).  If the harm factor favors the nonmoving party, a preliminary injunction may be granted only if the moving party can show a strong likelihood of success on the merits. *Immigrant Assistance Project*, 306 F.3d at 873.

For some requested preliminary injunctions, the moving party has an even heavier burden.  This heightened burden applies when the preliminary injunction would "(1) disturb the status quo, (2) [is] mandatory as opposed to prohibitory, or (3) provide[s] the movant substantially all the relief he may recover after a full trial on the merits." *Kikumura v. Hurley*, 242 F.3d 950, 955 (9th Cir. 2001).  Where the requested preliminary injunction alters the

status quo, the movant will ordinarily find it difficult to meet its heavy burden without showing a likelihood of success on the merits. *Id.*

Finally, under the Prison Litigation Reform Act (PLRA), prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) ... operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore*, 220 F.3d at 999.

**B.    DISCUSSION**

Plaintiff requests a temporary restraining order and a preliminary injunction against two (2) unnamed Defendants, Senior Correctional Officer Drugh Waggener and Correctional Officer Rick Rimington, for the following alleged unconstitutional conduct: scattering Plaintiff's legal papers all over his cell; verbally threatening bodily harm on Plaintiff; refusing to provide Plaintiff with his recreation time; filing false disciplinary charges against Plaintiff indicating they had read Plaintiff's legal papers; threatening Plaintiff with "the same treatment you received at High Desert"; and ultimately using intimidation, harassment, cell searches and unconstitutional confiscation of Plaintiff's legal papers to "compromise the integrity of Plaintiff's law suit and the judicial process." (Doc. #144 at 1-3).

Defendants argue Plaintiff failed to exhaust his administrative remedies and his motion fails procedurally because he seeks relief against unnamed defendants (Doc. #150). Defendants further argue Plaintiff has now shown a likelihood of success on the merits, there

1   is no possibility of irreparable harm, the balance of hardships favors Defendants and
2   advancement of the public interest favors Defendants (*Id.* at 9-13).

3       Plaintiff essentially responds that he has met his exhaustion requirements because
4   NDOC functions as one unit (Doc. #158).

5                    ## FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

6       The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect
7   to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner
8   confined in any jail, prison, or other correctional facility until such administrative remedies
9   as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement is
10  an affirmative defense that must be raised and proved by the defendant. *Wyatt v. Terhune*,
11  315 F.3d 1108, 1112 (9th Cir. 2003). Exhaustion is mandatory; the district court is left with
12  no discretion. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

13      Prisoners must exhaust all "available" remedies. *Id.* Exhaustion cannot be satisfied
14  by filing an untimely or otherwise procedurally infirm grievance, but, rather, the PLRA
15  requires "proper exhaustion." *Id.* at 93. "Proper exhaustion" is defined as "using all steps the
16  agency holds out, and doing so *properly* (so that the agency addresses the issues on the
17  merits)." *Id.* at 2385 (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002))
18  (emphasis in original). This district court has interpreted Justice Alito's majority opinion in
19  *Woodford* as setting forth two tests for "proper exhaustion": 1) the "merits test", which is
20  satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative
21  agency and appealed through all the agency's levels, and 2) the "compliance test", which is
22  satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v.*
23  *Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev 2006). "A finding that a plaintiff has met either
24  test is sufficient for a finding of 'proper exhaustion'. Defendant must show that Plaintiff failed
25  to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to
26  exhaust administrative remedies." *Id.*

27
28                                      22

First, there is no evidence Plaintiff exhausted his administrative remedies with respect to any of these potential claims against these unnamed Defendants; thus, the court is left with no discretion but to deny Plaintiff's motion. Although Plaintiff argues that NDOC operates as one unit, that does not permit Plaintiff to assert any new claim against any correctional officer for any conduct *in the instant suit* merely because the proposed Defendants are NDOC officials and NDOC operates as one unit. Under these facts, Plaintiff is in a completely different location than he was when the alleged assaults took place at HDSP and, despite his allegations that these unnamed Defendants are retaliating against him in order to hinder the current action, these unnamed Defendants are not parties to this action and no proper claims have been brought against them in this suit. The PLRA is clear – in order to bring a proper claim against these unnamed Defendants, which Plaintiff must do in order to show any probability of success on the merits, the PLRA requires exhaustion of administrative remedies. Furthermore, as previously stated, a fundamental principle of a preliminary injunction is the basic function to preserve the status quo ante litem *pending a determination of the action on the merits. Larry P.*, 502 F.2d at 965. There is presently no action pending before this court with respect to these claims against these individuals; thus, the there is no action pending determination on the merits.

Second, Plaintiff is basically trying to assert new claims against new Defendants not parties to this action and not arising out of the same set of underlying facts as the instant action. Thus, even if Plaintiff had exhausted his administrative remedies with respect to these potential new claims, these proposed claims are not properly before the court in the instant action. Accordingly, Plaintiff's request for a temporary restraining order and preliminary injunction should be **DENIED**.

///

///

///

///

23

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Senior District Judge enter an order **GRANTING** in part and **DENYING** in part Defendants' Motion to Dismiss/Summary Judgment on Amended Complaint (Doc. #104) as follows:

1) Defendants' request for summary judgment on Plaintiff's Eighth Amendment claim with respect to the prison yard incident should be **DENIED**.

2) Defendants' request for summary judgment on qualified immunity grounds with respect to the prison yard incident should be **DENIED**.

3) Defendants' request for summary judgment on Plaintiff's Eighth Amendment claim with respect to the infirmary incident should be **DENIED**.

4) Defendants' request for summary judgment on qualified immunity grounds with respect to the infirmary incident should be **DENIED**.

5) Defendants' request to dismiss Defendants Baca and Kennett should be **DENIED AS MOOT.**

6) Defendants' request to dismiss Defendant Powe for lack of personal participation should be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Senior District Judge enter an order **DENYING** Plaintiff's Cross-Claims Motion for Partial Summary Judgment as to the Liability of Defendant Kevin Kozloff (Doc. #152).

**IT IS FURTHER RECOMMENDED** that the Senior District Judge enter an order **DENYING** Plaintiff's Motion for Temporary Restraining Order and a Preliminary Injunction (Doc. #144).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

24

2.  That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED:   August 12, 2008.

_____

UNITED STATES MAGISTRATE JUDGE

25